# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE ESTATE OF TAMICO NORTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| 1) AVALON CORRECTIONAL SERVICES, INC., <br> 2) TURLEY RESIDENTIAL CENTER, L.L.C., and <br> 3) ALICE JOHNSON, et al., | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 14-CV-106-JED-TLW

## OPINION AND ORDER

The Court has for its consideration defendants' Motion to Dismiss (Doc. 5). Specifically, Avalon Correctional Services, Inc. ("Avalon"), Turley Residential Center, L.L.C. ("Turley"), and Alice Johnson, seek dismissal of plaintiff's state law constitutional claims against them for failure to provide pre-suit notice in accordance with the Oklahoma Governmental Tort Claims Act ("OGTCA"). Avalon and Turley also ask that her federal civil rights claims against them be dismissed for failure to state a claim.

### BACKGROUND

Plaintiff, the Estate of Tamico Norton, brings this lawsuit as a result of Tamico Norton's death while residing as an inmate at Turley. While her petition does not allege any dates associated with the incidents at issue, it is clear that she came to reside at Turley, a halfway house, at some time following a stint in the custody of the Oklahoma Department of Corrections. At some point, she fell in a bathroom and screamed, which resulted in the attention of Turley's staff and its administrator, defendant Johnson. Johnson, who plaintiff describes as an

authoritarian "Nurse Ratchet" [sic] type figure, and her staff evidently believed that Norton's fall was the consequence of illicit drug use—specifically, K2, a synthetic drug known to cause bizarre behavior and serious medical problems.[1] (Doc. 2 at 7).

As a result of the suspicion of drug use, Norton was placed in the "hot seat." The "hot seat" is a chair in the Turley facility where inmates are placed while awaiting the results of a drug test. The hot seat, which is apparently in clear view of other inmates, is essentially intended to create a spectacle of the person suspected of drug use as a deterrent to other inmates. The petition states that Norton was placed in the hot seat from noon until after 5:00 p.m. but was never tested for drug use or given medical attention. At some point within this timeframe, her condition began to deteriorate and Norton grasped at her throat and chest and sunk lower into the seat. Other inmates urged staff to obtain medical attention for Norton, but their concerns were dismissed on the assumption that Norton's behavior was merely the result of the K2. It was not until Norton fell to the floor and had blood "coming from her face" that medical attention was given. (Doc. 2 at 7). She was transported to a hospital by ambulance where, after some treatment, it was determined that she was brain dead. Norton's mother decided to end her life support after learning that she would never recover brain activity. The petition alleges that testing done at the hospital showed "no illicit substance in her system." (*Id*. at 8).

Norton's estate filed this lawsuit in Tulsa County District Court, alleging claims under the Oklahoma Constitution, Article 2, Sections 7, 9, and 30 and federal civil rights violations

---

[1] "Nurse Ratche**d**" is likely the intended subject of plaintiff's reference. That character was played by Louise Fletcher in the 1975 movie *One Flew Over the Cuckoo's Nest*. She was named the "fifth worst movie villain" by the American Film Institute. *Biography for Nurse Ratched*, (Sep. 29, 2014, 4:34 p.m.), http://www.imdb.com/character/ch0002714/bio.

under 42 U.S.C. § 1983. On March 7, 2014, the case was removed to this Court. Defendants' motion to dismiss followed.

**STANDARDS**

In considering dismissal under Rule 12(b)(6), this Court must determine whether the plaintiff stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). "Asking for plausible grounds … does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562. "Thus, if allegations are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Owens v. City of Barnsdall*, 2014 U.S. Dist. LEXIS 71796, *4 (N.D. Okla. May 27, 2014) (citing *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, this Court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## DISCUSSION

**1. Plaintiff's State Law Claims under the Oklahoma Constitution**

As noted, the defendants argue that this Court lacks subject matter jurisdiction over plaintiff's state law claims because she did not comply with the notice provisions found in the OGTCA. Plaintiff argues that it was not required to do so because its claims, which arise under the Oklahoma Constitution, are not subject to the limitations of the OGTCA.

Oklahoma has statutory mandates relating to private correctional companies, such as Avalon, which require that notice be given to them of any potential claim prior to suit:

> No tort action or civil claim may be filed against any employee, agent, or servant of the state, the Department of Corrections, private correctional company, or any county jail or any city jail alleging acts related to the duties of the employee, agent or servant, until all of the notice provisions of the Governmental Tort Claims Act have been fully complied with by the claimant. This requirement shall apply to any claim against an employee of the state, the Department of Corrections, or any county jail or city jail in either their official or individual capacity, and to any claim against a private correctional contractor and its employees for actions taken pursuant to or in connection with a governmental contract.

Okla. Stat. tit. 57, § 566.4(B)(2). The OGTCA notice provisions clearly require that notice be given and a denial of a claim be received prior to the filing of a lawsuit. Okla. Stat. tit. 51, §§ 156 and 157. This exhaustion is a jurisdictional prerequisite. *Gurley v. Mem'l Hosp. of Guymon*, 770 P.2d 573, 576 (Okla. 1989). Oklahoma's notice requirement has been applied even where the state claims at issue stem from the Oklahoma Constitution. *See Smith v. Avalon Corr. Servs.*,

4

*Inc.*, 13-CV-0676-CVE-TLW, 2014 WL 693445 (N.D. Okla. Feb. 21, 2014) (dismissing claim brought under Art. 2, § 2 of the Oklahoma Constitution for failure to comply with OGTCA notice requirements).

Unlike the circumstances in *Bosh v. Cherokee County Gov. Bldg. Auth.*, 305 P.3d 994 (Okla. 2103), which held that a claim under the Oklahoma Constitution cannot be barred by the OGTCA, requiring plaintiff to comply with the pre-suit notice provisions of the OGTCA would not immunize the defendants from liability, it would simply require plaintiff to pursue administrative exhaustion prior to pursuing this particular claim. Because plaintiff has not alleged compliance with the pre-suit notice requirement, its state law claims are dismissed without prejudice.

### 2. Plaintiff's § 1983 Claims

Avalon and TRC also seek dismissal of plaintiff's § 1983 claims, arguing that they cannot be held vicariously liable for Johnson's alleged actions and that plaintiff has not otherwise pled facts that would support liability against them. Plaintiff acknowledges that it does not seek to impose vicarious liability upon Avalon and TRC, and thus the only pertinent issue with respect to the § 1983 claims is whether plaintiff has properly alleged claims against them based upon their conduct.

Avalon and TRC house inmates under contract with the Oklahoma Department of Corrections. Hence, they are subject to liability under § 1983 for constitutional violations. *See West v. Atkins*, 487 U.S. 42, 54–57 (1988) (holding that a private doctor treating prisoners under a contract with state prison authorities acted under color of state law for purposes of § 1983 suit alleging Eighth Amendment violation). But, as noted, they cannot be held vicariously liable under § 1983 for an employee's actions. *See Brammer–Hoelter v. Twin Peaks Charter Acad.*,

492 F.3d 1192, 1211 (10th Cir. 2007) ("It is true that § 1983 liability for an entity cannot be predicated on *respondeat superior*."). Instead, plaintiff must establish independent liability against Avalon and TRC based upon a wrongful policy or custom. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482-83 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-28 (1988). The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson*, 627 F.3d at 788 (citations omitted).

Here, plaintiff's allegations are devoid of anything regarding a policy or custom on the part of Avalon or TRC. The plaintiff does seem to suggest that use of the hot seat was a custom that Johnson enforced, but it is unclear whether this could form the basis of a policy or custom attributable to Avalon or TRC because it is unclear whether Johnson has final policymaking authority or whether use of the hot seat is an official policy or custom that Avalon and/or TRC have otherwise implemented. As such, plaintiff's § 1983 claims against Avalon and TRC are subject to dismissal. Plaintiff shall, however, be given leave to amend its petition to cure this defect, assuming facts exist which would do so, as amendment does not appear to be futile.

### 3. Whether Avalon is a Proper Party

Avalon argues that it is not a proper party because it is a holding company of TRC and TRC operates the actual facility at issue. Plaintiff's petition, which must be accepted as true at this stage, alleges that Avalon owns and operates the Turley facility. This is sufficient to deny dismissal on this basis.[2]

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss (Doc. 5) is **granted in part and denied in part**. Plaintiff's state law claims are **dismissed** for lack of subject matter jurisdiction.

Plaintiff shall file within **21 days** of the date of this Opinion and Order an amended complaint which cures the deficiency noted with respect to its § 1983 claims against Avalon and TRC. If plaintiff fails to do so, those claims will be dismissed as to Avalon and TRC.

**SO ORDERED** this 2nd day of October, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[2] Defendants made no attempt to seek summary judgment on this basis, and in light of the applicable dismissal standards and current posture of this case, they are cautioned against urging arguments so obviously lacking in merit in future pleadings.